The next matter, number 21-1507, United States v. Elisir, Rosario-Ramos. At this time, would Counsel for Appellant Rosario-Ramos please introduce himself on the record to begin. Good morning to the Honorable Court. My name is Jose R. Olmo Rodriguez, and I represent Appellant Elisir Rosario-Ramos. You may begin. If I may reserve two minutes. You may. Thank you, Your Honor. At the district court level, in the case of Mr. Elisir Rosario-Ramos, his trial attorney did present to the court with evidence that the coroner's handbook provides that the contributory cause is any other illness or condition that is found at the moment of the autopsy, and may or may not have a part in the death. So it's not conclusive according to the handbook. And that was brought up to the court by the trial counsel at sentencing and also at the... Suppose the pathologist had said this assault may have contributed, may have caused it, but I don't know if it did or did not. Suppose that was the testimony. Could a court then say that beating like that, which may have caused, is enough for an enhancement? I think that as the prosecution admitted, it was not enough to get to that point. May have or may not. The prosecutor admitted that he could not prove beyond preponderance of evidence. But there's more here, right? Because the niece testifies or makes a statement in this case about the extreme stress the victim was going through after the incident in the hospital, which seems to me would be related to heart conditions or making them worse. So that, unlike the prior case, that evidence, that statement is in this case, right? Yes, Your Honor. But it is not conclusive. We're sentencing a person to 23 years in prison with... Right, but we don't require judges. It doesn't have to be conclusive. We would have to find that she was clearly wrong, correct? Yes, Your Honor. And so you have testimony about the stress condition that the person was under and then death caused by a medical condition that I would think is related to stress. And so the judge makes a conclusion. How do we say that's clearly then wrong? Well, I believe it would be a medical conclusion which the pathologist or any other person qualified to do so would have had to go on the record. Can I just understand if I'm following your argument? Does it depend on what the district court... The district court says this, if you ask me, I think the government is wrong in the assessment that was done, but it's not applied. That's with respect to the enhancement. But that the event that it had a contributory factor and accelerated the death, not may have, accelerated the death of this lady without a doubt. I think that's what the forensic report findings do reflect. And so I guess your contention is they just do not reflect that if you look at the record because of what the handbook says. So that's the clear error? Correct, Your Honor. That is our position. And even though the district court upon the admission of the prosecution that it could not prove by preponderance of the evidence that the cause was different from what the autopsy said that the cause was, the court couldn't, even though it didn't apply the cross-reference, it did because it went over the same factors that were already considered in the guidelines and even in the crime itself, and counted it twice, giving it extra weight to reach the 23 years, which is close to the cross-reference, which the judge believed that should have been applied. But upon the admission of the prosecutor, the judge found another way to reach its goal, in sentencing, which we believe is not adequate. And the handbook was submitted into the record? The handbook was not submitted into the record, but it was part of the reference to the handbook, a specific reference that we're placing the objections to the presented report, Your Honor. But again, there's nothing, all that is is a statement by a lawyer that that's what the handbook says. Well, it provided references, a specific reference of the handbook and quotes which were not disputed by the prosecution or the probation office. The defendant and the prosecution seem to have agreed that the chronology here in which the beating followed by the death nine days later was a factor relevant to calling for some degree of enhanced sentencing, because it was stated as such in the plea agreement. You're correct, Your Honor. So given that, couldn't the court just agree with that assessment, but think that it required more sentencing than the parties had agreed to? Well, yes, but the court went even further to basically establish a scientific fact that the death, the beating and the whole situation has something to do with the death, when the only scientific evidence that we have on the record is cause of death is the preexisting conditions of the person. So you're just saying the rationale, the district court itself articulated as to what its predicate for the variance was, was a misunderstanding of what the medical evidence showed given what the handbook shows. Yes, Your Honor. Suppose there had been no pathologist report here. We had a woman in her condition who was beaten in the manner she was basically terrorized in her home, and then she dies nine days later. Would it be clear error for a judge to say, I don't think that's a coincidence, I think there's a causal connection there? Yes, and even further, those factors are already included in the enhancement. A vulnerable victim, you can expect a vulnerable victim after serious bodily injury which was also part of the enhancement. It encompasses the guideline analysis. But there were aggravating factors in addition. He lied about the crime, right? He lied that there was another person there. The judge did take that into account, right? So it's not just everything that was relevant to this case was accounted for by the guideline. Even if I assume that's true and there were other things going on here that were aggravating weren't there? Well, specifically as to lying, there's no finding by the court that he lied. There is two. His co-defendant gave a different version than he did. The only stipulated version which is uncontroverted is the one in the plea agreement status which is that they both did it with a specified motive. Does he still assert there's a third person gringo involved? Excuse me, Your Honor. No, he doesn't still assert there's a third person gringo involved in the crime, does he? He originally says the beating was done by a third person named gringo. And eventually he disregards that and says it was me and my brother, right? Yes. So when he said there was a gringo involved, that was not true, correct? Correct. Apparently from what he said at the sentencing hearing, Your Honor, yes. Right. And one of the things the judge focused on was that he didn't tell the truth about the crime. She mentioned it, but she is very, at one point, there's one place at the end of the sentencing, the district court judge tells him that she's not applying any obstruction of justice for any of the inconsistencies in the statement. That's how the district court states it. So, Your Honor, you're completely right about those remarks, but there's no finding specifically as to that by the district court. And the only real finding that we have is that they both did it without any specification on who did what. Thank you. Thank you, Your Honor. Thank you, counsel. At this time, would counsel for the United States please introduce himself on the record to begin? Okay, good morning again. Greg Conner for the United States. We're asking this panel to affirm Rosario's 23-year sentence because the district court both justified the upward variance and because it sufficiently differentiated between the two brothers. First, as in Martinez's plea agreement, Rosario's plea agreement also specifically referenced the victim's death within nine days of the attack as a relevant sentencing consideration. So when Rosario says in his brief that the trial defense lawyer should not have agreed to any sort of upward variance, that, again, is inconsistent with Rosario's position in the district court. The victim's death was a permissible sentencing consideration. Both parties agreed to that. Second, as far as the contention that the guidelines encompassed everything because certain enhancements applied, there were multiple considerations that aggravated this case that the enhancements did not account for, especially the extent and heinous nature of the attack. So, for example, when you have an enhancement for restraint, they restrained her initially by holding her hands. That restraint continued. They tied her, they blindfolded her, they gagged her as they beat her, and they did it all in her home where she was supposed to feel safe. So, no, that restraint enhancement does not capture everything. Similarly, the weapon and injury enhancements do not account for the fact that it wasn't just being struck with a frying pan. She had bruises all over her body, on her thighs, on her back, on her thorax. And what the district court found was all of this was unnecessary because she had already given them everything, told them where her keys were, what her card information was. She had already given them everything, so the beating continued unnecessarily. And as far as the 77-year-old woman, as far as her age and the vulnerability enhancement, that doesn't account for the fact that she placed her trust in Rosario, in his grandfather, giving them her debit card so that they could buy themselves breakfast. And that betrayal of the trust is a theme throughout Rosario's sentencing hearing as something that seriously troubled the district court. You agree that the district court based the full variance in part on the contributory factor finding in the autopsy report, or do you disagree with that? I agree. That was part of the rationale. And do you agree that the only explanation the district court gives as to why she's relying on the contributory factor thing is because it shows without a doubt that it accelerated the death? I wouldn't cabin the district court's reasoning to that extent. Is there some other thing where she indicates why she's relying on the contributory factor? Yeah, she discusses the fact that it's both that she has this autopsy report that lists it as a contributory factor and the specific medical conditions of the victim that she had hypertension, something that it's common sense to say an attack being hit by two young men would exacerbate that. So it's both the autopsy report, which, yes, lists it, and in our view common sense that with these specific conditions, yes, an attack is going to exacerbate it. So just so I understand your argument, one possibility is what you're saying is even if it was not permissible to rely on the autopsy report given what the record showed about what that might mean and her statement that it showed without a doubt that it was accelerated, is the idea that it's harmless because she independently would have relied on it without the autopsy report? Or at the very least that she could have reached this conclusion based on common sense given the medical conditions. When you say could have, that sounds like the language of remand. Where if you say would have or did, then we usually just would say there was an alternative ground so we wouldn't need to remand. I guess I'm asking if the government has a view as to which of those two things you're saying given the sentencing transcript. When I say could have, I mean there are multiple sources that she could have pointed to to reach that conclusion, and I think she did both in the, I believe, niece's description of what the victim recounted in the hospital. Again, we think it's common sense that being attacked in a stressful situation would increase high blood pressure and other heart conditions, and then yes, the autopsy report, and we don't think that requires a remand. Do you think there was on the record any doubt? In other words, was the judge correct to say that the report showed something without a doubt? I think that might have just been a point of rhetorical emphasis, but not something that we think is reversibly wrong. The district court said all indications point to this being a contributory factor, and as far as the arguments by defense counsel, there's nothing in the record that shows that's so wrong as to meet the clear air standard. What about the handbook? Well, I mean the handbook might be more relevant if, for example, the murder cross-reference had been applied, or if this wasn't the type of health condition. When she says it accelerated the death without a doubt, I think that's what the forensic report findings do reflect. What forensic report findings is she talking about other than the autopsy report? I believe it's the autopsy report. There are specific medical findings regarding the hypertension. And then the handbook suggests that's not what the autopsy report says. That's, I take, their argument. What's your response to that? Well, a few things. As the panel mentioned earlier, I don't think that was in front of the district court the argument was, but, again, that's just a lawyer's statement. And as far as whether in another case an autopsy report merely listing contributory is enough for a district court to say contributory, maybe if it's more complicated and not something that the average person could understand, but in our view the average person can reach the conclusion that if you have high blood pressure and you're 77 years old and get attacked, that is going to exacerbate it. The government itself did not ask for the variance this high. So there's not a compulsion to vary this high. The question is, did the district court, in deciding to vary this high, rely on a misunderstanding of the forensic report in doing so? If so, I would think you would agree you remand unless it's so perfectly clear that even on remand they'd come out the same way. And then the question is, what in the record shows that it's clear the district court would, given what the transcript suggests as the district court's rationale for relying on this factor in varying as high as she varied? I think I want to go back to the first part of your question, which is whether it was a misunderstanding, and in our view it's just not a misunderstanding to say that the autopsy report saying contributory, it does not have any meaning so different from ordinary parlance that the district court could basically repeat that, yes, I agree that it was contributory and use that as a consideration. And as the panel mentioned earlier, that's also consistent with both parties agreeing that the victim's death was a relevant consideration in the plea agreement. And briefly, because I'm almost out of time, as far as the district court differentiating between the brothers, first, this was the younger brother who knew the victim, and both the victim's family and the district court were troubled by the betrayal of trust. And that betrayal both disrupted the, well, had the effect of the attack, but also disrupted the close-knit community that the victim lived in. The other factor that I think should be mentioned is the victim's family gave a statement in this hearing. They were at both hearings, but of the two, they were most offended by Rosario because he knew the victim and because the victim had helped his grandfather obtain an apartment in the past, knew both Rosario and the grandfather, and it was meaningful for the district court that of the two brothers, the victim's family made a statement at this hearing. And then finally, yes, Rosario did come up with multiple tales. I don't know that the district court used the word lie, but the district court did say at page 42 of the transcript that Rosario had come up with another new story, which in hindsight was another attempt to deflect blame. As the panel mentioned earlier, he wasn't going with the gringo story of the hearing. He was now going with Martinez being the person doing the beating, and he suggested that he didn't know the victim was home, and the district court rejected that and said, of course, she's going to be home. She's a 77-year-old woman, and it was 9 p.m. at night. And I believe that's all, so unless the panel has any questions, I'll rest on my brief. Thank you. Thank you, counsel. At this time, would counsel for the appellant please reintroduce himself back on the record? He has a two-minute rebuttal. We have nothing further, Your Honor. Where in the appendix do you want us to look to see this point, that there's something in the record showing that the contributory factor language in the forensic report doesn't mean what the district court said about it? It will be in the objections to the presentence investigation report, Your Honor. Is that in the appendix? Yes. And what does it say? I'm just trying to find the part where it's clear that. It specifies what is the meaning of cause of death and what is the meaning of contributory. Okay, and that's with reference to the handbook? Yes. Okay, thank you. Any further questions? Thank you, Your Honor. Thank you. Thank you, counsel. That concludes argument in this case.